**John B. BARCLAY, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–94.

United States Court of Veterans Appeals.

Feb. 3, 1993.

Before FARLEY, Associate Judge.

## MEMORANDUM DECISION

FARLEY, Associate Judge:

This is an appeal from an October 16, 1991, decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for multiple sclerosis (MS). A timely appeal to this Court followed. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a) (formerly § 4052(a)). On June 25, 1992, appellant filed a brief in support of his claim; appellant asserted that the Board erred in (1) failing to seek

an outside medical opinion before it denied service connection for MS and (2) failing to grant service connection for MS. As an appendix to his brief, appellant provided a copy of a document from the Veterans' Administration (now Department of Veterans Affairs) (VA) titled: "IB 11–70, Multiple Sclerosis: Guidelines for Diagnosis and Management" (VA Department of Medicine and Surgery, April 21, 1980) [hereinafter "IB 11–70"]. On August 26, 1992, the Secretary of Veterans Affairs (Secretary) filed a motion for summary affirmance, for acceptance of the motion in lieu of a brief, for a stay of proceedings pending a ruling on the motion, and to strike evidence submitted with appellant's brief; the Secretary asserted that the material provided in the appendix to appellant's brief was not part of the record on appeal and, therefore, is not properly before this Court. Secretary's Mot. at 1. On September 3, 1992, appellant filed a response in opposition to the Secretary's motion; in his response, appellant noted that he does not oppose the Secretary's motion to strike from the record the appendix attached to appellant's brief, but "state[d] for the record that this was placed into the record for informational purposes only, to show the difficulty in recognizing MS." Appellant's Response at 3. On December 17, 1992, appellant's representative filed a motion for expedited consideration, pursuant to Rule 47 of the Court's Rules of Practice and Procedure, on the grounds that appellant is terminally ill.

## I. BACKGROUND

Appellant served on active duty from February 1943 to November 1945. R. at 1. His service medical records indicate a history of encephalitis in 1940 which was of short duration and left no residuals, with no neurological problems at that time. R. at 3. Appellant's discharge examination noted a history of encephalitis in 1941, rather than 1940, but was negative for any physical problems. R. at 10. Appellant was first diagnosed with MS in September 1956. R. at 13. According to a history provided by appellant in a September 1956 private hospital report, an "onset of un-

steady gait associated with weakness of the [right] arm" first occurred in 1953. R. at 31. A letter by a private physician, Dr. A.N. Johns, M.D., dated May 13, 1961, noted that appellant was treated in his office on December 1, 1945, with complaints of urticaria (defined as "a vascular reaction, usually transient, involving the upper dermis, representing localized edema caused by dilatation and increased permeability of the capillaries, and marked by the development of wheals [hives or welts]," see DORLAND'S ILLUSTRATED MEDICAL DICTIONARY [hereinafter DORLAND'S] 1796, 1854 (27th ed. 1988)); that appellant was next seen on November 8, 1947, with a sinus infection; and that appellant also suffered from a facial paralysis and was referred to Max Schnitker, M.D., for this condition. R. at 21. Dr. Johns noted in his letter that the diagnosis for the latter ailment was neuritis, but that it was now apparent that this was the beginning of the symptoms common to MS. *Id.* (Neuritis is defined as "inflammation of a nerve, a condition attended by pain and tenderness over the nerves, anesthesia and paresthesias, paralysis, wasting, and disappearance of the reflexes," see DORLAND'S, at 1127.) In a rating decision dated March 15, 1962, the VA Regional Office (RO) denied appellant's claim for service connection for MS on the basis that "[t]he evidence before the Board [did] not establish that the veteran suffered [from] [MS] in service or [that MS] was ... diagnosed within the presumptive period as required by law." R. at 53. On June 30, 1962, the RO confirmed the denial of service connection for MS. R. at 62.

On October 12, 1962, the VA notified appellant that newly enacted Public Law No. 87–645, 76 Stat. 442 (Sep. 7, 1962), extended the presumption period for service-connection for MS from three to seven years. In a rating decision dated November 8, 1962, the RO confirmed the previous denial of service connection for MS, noting that "[a] determination has been made that [MS] did not develop to a compensable degree of disability within seven years from the date of separation from military service, as required by [Public L. No. 87–

645]." R. at 72. On November 17, 1962, appellant perfected an appeal to the BVA. R. at 73.

In support of his appeal to the BVA, appellant submitted another letter by Dr. Johns, dated February 2, 1963; in this latter letter Dr. Johns noted that appellant was treated by him on March 17, 1952, for a facial paralysis. R. at 76. Dr. Johns also stated that, "while in this disease, an exact date of the beginning illness is impossible to state, I do feel that Mr. Barclay has been suffering from MS, or it's [sic] first symptoms since on or before December 1, 1945." *Id.* Appellant also submitted a "Certificate of Attending Physician," by Dr. George T. Booth (signed by Dr. Max T. Schnitker in Dr. Booth's absence), dated June 23, 1961; the certificate noted that appellant was treated by Dr. Booth on March 9, 1952, for a right facial paralysis. R. at 78. Dr. Booth noted his impression that appellant was suffering from Bell's Palsy at that time, and referred appellant to a physical rehabilitation center for extensive physiotherapy. *Id.* A report of a special neuropsychiatric examination by Dr. Benjamin Berger, dated March 26, 1963, noted in pertinent part:

> Veteran has a history of diplopia in 1939 strongly suggestive of the original episode of [MS]. The exact period when there was again a recurrence of his symptoms is difficult to ascertain. They may have been present in 1952 when he had the Bell's palsy, although this is a relatively uncommon associate of [MS] but would definitely confirm the 1956. In reconstructing the clinical history, I feel that the actual onset of this man's condition was prior to service in 1939 or 1940, when he was hospitalized for diplopia and at that time a diagnosis of encephalitis was made. There was then the rather typical picture of a long remission and the recurrence of symptoms some time in the 1950's, the exact date again difficult to ascertain. At the time he was hospitalized in 1956 there was full-blown and moderately-advanced symptomatology.

R. at 87. (Diplopia is defined as "double vision in which the images of an object are formed on noncorresponding points of the retinas," *see* DORLAND'S, at 479. Bell's palsy is defined as "unilateral facial paralysis of sudden onset, due to lesion of the facial nerve and resulting in characteristic distortion of the face," *id.* at 1215.) A report of a special eye examination conducted on March 26, 1963, revealed "no ocular manifestations of any [MS]." R. at 88. Appellant also provided lay statements from his father and two family friends to the combined effect that following service he was lacking in energy and stamina; that he would sometimes stagger and stumble; that in 1946 this unsteadiness became worse; and that he was sometimes subject to periods of shortness of temper. R. at 97.

In a decision dated August 15, 1963, the BVA denied appellant's claim on the basis that MS was not demonstrated in service and was first manifested in 1956. R. at 98. The Board noted:

> In his report of February 1963, Dr. Alex N. Johns stated that "facial paralysis," diagnosed as neuritis, occurred in March 1952. The records by Dr. George T. Booth showed his condition was manifested in March 1952 following a period of sleep in an unusual position; and that there were no other abnormal neurological findings. His diagnosis was Bell's palsy, a temporary edema of a nerve. [MS] was first manifest in September 1956 with a history of onset [of] symptoms in 1953. The lay statements relative to symptoms in 1947 is at variance with the veteran's statements during hospitalization in 1956, when he dated the onset of symptoms to 1953.

*Id.*

Appellant's claim for service connection for MS was subsequently denied in unappealed rating decisions in January 1965 (R. at 112), November 1973 (R. at 124), and August 1984 (R. at 126, 133). In May 1989, appellant attempted to reopen his claim (R. at 138–39), and in a subsequent rating decision dated August 18, 1989, the RO confirmed the previous rating decisions (R. at 141). Appellant filed a Notice of Disagreement on November 17, 1989 (R. at 144), and

a Statement of the Case was provided to appellant on December 12, 1989 (R. at 147–49).

In May 1990, appellant attempted once again to reopen his claim for service connection for MS. R. at 150–59. The additional evidence submitted by appellant in support of his claim consisted of three statements by Dr. Anthony M. Iannone dated January 18, 1990, February 6, 1990, and April 6, 1990, respectively. R. at 152, 155, 157. In a decision dated January 10, 1991, the BVA remanded the matter back to the agency of original jurisdiction to (1) review appellant's claim considering finality, relative to the August 1963 BVA denial of service connection for MS and (2) provide appellant and his representative with a Supplemental Statement of the Case (SSOC) to include the law and regulations applicable to finality of BVA decisions. R. at 165–66. On remand, in a rating decision dated January 24, 1991, the RO confirmed the denial of appellant's claim, finding that "[n]o new and material evidence [had] been submitted to warrant reconsideration of the prior denial of service connection for [MS] by the Board of Veterans['] Appeals in 1963, in a new and factual basis." R. at 168.

An SSOC was provided to appellant on February 5, 1991. R. at 169–72. In a decision dated October 16, 1991, the BVA denied appellant's claim for service connection for MS. *John B. Barclay*, BVA 91–34025 (Oct. 16, 1991). The Board found that "[t]he evidence submitted in connection with the most recent claim bears directly and substantially upon the specific matter under consideration, and some of it is neither cumulative nor redundant, and so significant that it must be considered in order to fairly decide the merits of the claim." *Id.* at 5. However, the Board also found that "[t]he record as a whole [did] not establish [MS] in service or within 7 years after ... discharge." *Id.* at 6. Specifically, the Board noted:

> .... The statements by Doctor Iannone dated in January and April 1990 are considered new and material since they indicate in the physician's opinion that the symptoms reported by the veteran in

1943 represented the signs of an initial attack of [MS].... This opinion was based on a medical history provided by the veteran. Furthermore, these symptoms are non-specific, they may be found in many unrelated disorders and even had they been documented in the service records, it would be highly speculative to assume they represented the onset of [MS]. This evidence, while new, does not provide objective clinical evidence of [MS] in service.

The Board also determined, as a matter of law, that an advisory medical opinion from an independent medical expert was not warranted. *Id.* at 6. The Board noted:

> ... [We] are not persuaded that the medical questions presented in this case are of such complexity or controversy as to require an advisory medical opinion from an independent medical expert. The Board is satisfied that the current objective evidence of record is adequate to show that the veteran's [MS] was not shown during service or within the 7 year presumptive period.

*Id.* at 5.

## II. MOTION TO STRIKE EVIDENCE

■ Review by this Court is limited to the record of proceedings before the Secretary and the Board. 38 U.S.C. § 7252(b) (formerly § 4052(b)); *Rogozinski v. Derwinski*, 1 Vet.App. 19, 20 (1990). This Court is therefore precluded, as a matter of law, from considering any material which was not contained in the record of proceedings below. *See Rogozinski, supra.* However, as this Court stated in *Murincsak v. Derwinski*, 2 Vet.App. 363, 372 (1992), "[t]he Court cannot accept the Board being 'unaware' of certain evidence, especially when such evidence is in possession of the VA, and the Board is on notice as to its possible existence and relevance." *See also Bell v. Derwinski*, 2 Vet.App. 611, 612 (per curiam order, July 21, 1992) ("Where, as here, a dispute arises as to the content of the record and where the documents proffered by the appellant are within the Secretary's control and could reasonably be expected to be a part of the record 'before

the Secretary and the Board,' such documents are, in contemplation of law, before the Secretary and the Board and should be included in the record."). Since the material contained in the appendix to appellant's brief, i.e., the copy of IB 11–70, is a VA publication, the Secretary and the BVA had constructive, if not actual, knowledge of its existence. *See Bell, supra.* Therefore, the Court finds, as a matter of law, that the additional material was "before the Secretary and the BVA" when the BVA decision was made, and it will be included in the record on appeal before this Court. *See* 38 U.S.C. § 7252(b).

### III. MOTION TO EXPEDITE CONSIDERATION

■ In his December 17, 1992, motion for expedited consideration, appellant's representative requested expeditious handling of appellant's appeal, pursuant to Rule 47 of this Court's Rules of Practice and Procedure, based upon appellant's asserted terminal medical condition. Rule 47, however, authorizes this Court to order expedited briefing rather than expedited adjudication; it provides, in pertinent part:

> On motion of a party for good cause shown, by written agreement of the parties, or on its own initiative, the Court may order expedited briefing of a case. Such motion or agreement must be filed not later than ten days before the last day for filing the record on appeal.

U.S.Vet.App.R. 47(a). Since the record on appeal in this matter was filed by the Secretary on May 29, 1992, and both parties have already filed their respective briefs, Rule 47 is inapplicable and appellant's motion for expedited consideration, pursuant to Rule 47, is denied as moot.

### IV. ANALYSIS

■ A veteran is entitled to service connection for a disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110 (formerly § 310). In determining whether MS was incurred in or aggravated by service of more than ninety days during wartime, the veteran is given the benefit of a presumption that if the MS becomes manifest to a degree of 10% or more within seven years from the date of separation from service, the MS may be presumed to have been incurred in or aggravated by service, even though there is no evidence of such disease during the period of service. 38 U.S.C. § 1112(a)(4) (formerly § 312(a)(4); 38 C.F.R. § 3.307(a)(3) (1991). This presumption is then rebuttable by affirmative evidence to the contrary. 38 U.S.C. § 1113 (formerly § 313); 38 C.F.R. § 3.307(d) (1991).

Under 38 U.S.C. § 7104(b) (formerly § 4004(b)), a final decision by the BVA on a given claim "may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." The exception to this rule is 38 U.S.C. § 5108, which states that "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." *See Thompson v. Derwinski,* 1 Vet.App. 251, 253 (1991).

> *New and material evidence* means evidence not previously submitted to agency decisionmakers which bears directly and substantially upon the specific matter under consideration, which is neither cumulative nor redundant, and which by itself or in connection with evidence previously assembled is so significant that it must be considered in order to fairly decide the merits of the claim.

38 C.F.R. § 3.156(a). "New and material" evidence is that which is "not ... merely cumulative of other evidence on the record" and "is relevant and probative of the issue at hand." *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991).

■ In *Manio v. Derwinski,* 1 Vet.App. 140 (1991), this Court established that the BVA must perform a two-step analysis when the veteran seeks to reopen a claim based upon new evidence.

> First, the BVA must determine whether the evidence is "new and material". 38 U.S.C. § [5108]. Second, if the BVA determines that the claimant has produced new and material evidence, the case is reopened and the BVA must evaluate the

merits of the veteran's claim in light of *all* the evidence, both new and old. *Id.* at 145 (citation omitted). The determination whether evidence submitted to reopen a previously disallowed claim is new and material under 38 U.S.C. § 5108 is a question of law which this Court reviews de novo. *Colvin,* 1 Vet.App. at 174.

■ Here, as to the first part of the *Manio* test, the Court finds that the Board properly determined that additional evidence submitted by appellant was "new and material." *Barclay,* BVA 91–34025, at 4–5. Dr. Iannone's January 1990 statement provided in pertinent part:

> History presented by the patient is that he first noticed strange feelings, such as generalized weakness and a feeling of fatigue in 1942. He states that he had finished his basic training successfully without having any difficulties. When he was sent on to his secondary school in the service, he experienced a bout which consisted of a strange feeling in his abdomen, a feeling of extreme weakness all over his body, which lasted for two days and suddenly disappeared. The patient was then returned to duty symptom free. He was then able to continue his military career without any further episodes. In the fifties he noticed weakness of his lower extremities, which gradually were observed. He has been diagnosed as having Bell's Palsy at one time and a diagnosis of [MS] was first made in 1956.

R. at 152. Dr. Iannone also noted his impression that "[i]t is difficult to be sure that the patient has MS because he presents with only focal lesions in the spinal cord" and recommended that an MRI scan be done to determine whether appellant was suffering from MS. *Id.* at 153.

Dr. Iannone's February 1990 letter provided the results of the recommended MRI scan; the letter stated in relevant part:

> John Barclay was seen on February 1, 1990[,] in the Neurology Clinic. The MRI scan revealed very definite evidence of periventricular demyelinization and was read by the x-ray people as consistent with [MS]. I have reviewed these films and agree. I believe we have prov-

en that Mr. Barclay has [MS] and in light of this, his case should be reopened.

R. at 157.

Dr. Iannone's April 1990, letter stated in relevant part:

> It would seem that feelings of weakness and fatigue which Mr. Barclay mentioned in 1942 could very well have been the signs of an initial attack of MS. Knowing from the MRI scan that the patient definitely had MS, it is customary then to go back to the patient's history to see whether any complaints of prior episodes could be related to MS such as the bout of weakness and numbness in 1942 associated with fatigue, which then cleared. It would, in my mind, present clear evidence of an attack. In patients who had MS, it is not uncommon for attacks to come, go, and then remain dormant for periods of time. It is clear that the patient had a few other episodes in the fifties and finally a clear clinical diagnosis made in 1956 when he developed diplopia. In addition, he had episodes of emotional labidity commonly seen in patients with MS. Thus, in my view of the diagnosis, I believe it would be appropriate to re-open the issue of this patient's service related mess [sic] of his MS symptoms.

R. at 155. Although Dr. Iannone's April 1990 letter referred to 1942 rather than 1943 as the date appellant experienced the initial symptoms of weakness and fatigue, it appears that Dr. Iannone merely misstated the date in his report; the fact that appellant reported that he first experienced such symptoms during service in 1943 does not appear to be in dispute between the parties. *See* R. at 150–51 (appellant notes that Dr. Iannone erred in reporting the date in his April 1990 letter); *Barclay,* BVA 91–34025, at 4 (BVA decision refers to 1943, rather than 1942, as the date of appellant's reported symptoms).

After reviewing each of Dr. Iannone's letters, this Court agrees with the Board's determination that Dr. Iannone's January and April 1990 letters qualify as "new" in that they are noncumulative, and "material" in that they are relevant and probative

on the issue of whether appellant's MS was manifested within the seven year presumption period. *See Manio, supra; see also Colvin*, 1 Vet.App. at 174. While the BVA did not refer to the February 1990 letter, this Court finds that although the letter appears to be noncumulative, it is immaterial since it merely corroborates that appellant currently suffers from MS; it does not shed any light on the issue in this appeal, whether appellant's MS was incurred in or aggravated by service.

■ As to the second part of the *Manio* test, the BVA appears to have evaluated the merits of the veteran's claim in light of *all* the evidence, both new and old, and determined that the medical conclusions of Dr. Iannone do not provide a new factual basis for the claim. *See Colvin*, at 175. The BVA noted:

> This opinion was based on a medical history provided by the veteran. Furthermore, these symptoms are non-specific, they may be found in many unrelated disorders and even had they been documented in the service records, it would be highly speculative to assume they represented the onset of [MS]. This evidence, while new, does not provide objective clinical evidence of [MS] in service.

*Barclay*, BVA 91–34025, at 4.

In rejecting medical evidence and reaching a contrary medical conclusion, it is necessary for the BVA to state its reasons for doing so and provide a medical basis other than its own unsubstantiated medical conclusions to support the decision. *Colvin*, 1 Vet.App. at 175; *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). In *Colvin*, the Court noted:

> The BVA decision does not cite medical evidence of record in this case or recognized medical treatises to support these medical conclusions. The BVA, in finding that the new evidence did not provide a new factual basis for a claim was, in effect, refuting the expert medical conclusions in the record with its own unsubstantiated medical conclusions. BVA panels may consider only independent medical evidence to support their findings. If the medical evidence of record

is insufficient, or in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or citing recognized medical treatises in its decision that clearly support its ultimate conclusions. *See* 38 U.S.C. § 4009 (1988); *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). This procedure ensures that all medical evidence contrary to the veteran's claim will be made known to him and be a part of the record before this Court.

*Id.* 1 Vet.App. at 175.

Here, the Board certainly was not compelled to accept Dr. Iannone's medical opinion. However, in rejecting Dr. Iannone's opinion and reaching a contrary medical conclusion, the Board failed to provide adequate reasons for doing so and, specifically, failed to point to a medical basis other than its own unsubstantiated conclusions in support of its denial of appellant's claim. *Id.*

## V. CONCLUSION

Upon consideration of the record and the filings of the parties, the Court finds that a remand is both necessary and warranted. On remand, the Board will have the opportunity to supplement the record by seeking an advisory opinion, ordering further medical examinations, and/or quoting from recognized medical treatises in support of its decision. *Id; Hatlestad v. Derwinski*, 3 Vet.App. 213, 217 (1992). The Board also will have the opportunity to provide an adequate statement of its reasons or bases for its conclusions, including an explanation of any medical principles upon which it relied in making its determinations. *Id; see also Gilbert v. Derwinski*, 1 Vet.App. 49 at 56. "A remand is meant to entail a critical examination of the justification for the decision. The Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). Moreover, if the circumstances warrant,

the BVA is authorized and obligated to remand the claim to the regional office for further development. *See* 38 C.F.R. § 19.-182(a); *Littke v. Derwinski,* 1 Vet.App. 90 (1990). Summary disposition is appropriate. *Frankel v. Derwinski,* 1 Vet.App. 23 (1990).

Accordingly, the Secretary's August 26, 1992, motion to strike evidence submitted in the appendix to appellant's brief is DENIED; appellant's December 17, 1992, motion for expedited consideration is DENIED; the BVA's October 16, 1991, decision is VACATED; and this matter is REMANDED for further proceedings consistent with this decision.